HOWARD M. KAY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14773.  Promulgated September 28, 1948.

*James S. Y. Ivins, Esq.*, for the petitioner.
*Louis A. Boxleitner, Esq.*, for the respondent.

472

476

478

OPINION.

DISNEY, *Judge*: The respondent contends that petitioner is taxable on one-third of the income from his deceased father's estate in the years 1942 and 1943, even though in a previous year he had pur-

portedly conveyed a portion of his anticipated interest in the estate to himself as trustee for his wife and children. His argument is that petitioner is taxable on the one-third interest, above mentioned, "In transferring to himself as trustee a portion of his anticipated share in the estate of his deceased father, petitioner granted to himself (and exercised) such extensive powers of administrative authority and control over the income and corpus of the alleged trust as to remain the real owner of the interest purportedly conveyed and petitioner is, therefore, taxable upon the income arising therefrom." Respondent here relies upon the provisions of section 22 (a) of the Internal Revenue Code,[2] as construed by *Helvering* v. *Clifford*, 309 U. S. 331, and the many decided cases which have followed it.

It is well established that each case, involving the *Clifford* doctrine, must be decided upon its own particular facts; further, that no one fact is normally decisive. *Belknap* v. *Glenn*, 55 Fed. Supp. 631, and cases cited therein. *Whayne* v. *Glenn*, 59 Fed. Supp. 517, pointedly states the three dominant considerations to be considered where the *Clifford* doctrine is to be applied are as follows:

\* \* \* (1) whether the trust was a long or short term trust, (2) the control of the creator over the trustee and the reserved power to manage the trust either by the terms of the trust instrument or such control over the trustee, and (3) the relationship of the beneficiaries to the settlor with particular reference to the family unit and the obligation of the settlor to support such beneficiary within that economic unit. \* \* \*

and cites as authority the *Belknap* case.

The fact of whether the trust is of long or short duration is not of itself controlling. There can be no doubt, in the light of cases decided by this as well as other courts, that this fact can weigh heavily as to the taxability of a trust to the grantor under the so-called *Clifford* doctrine, but the mere fact that the trust in question is of long duration does not control the taxability of the income. The income of a long term trust, as of a short term trust, may be taxable to the grantor. *Commissioner* v. *Buck*, 120 Fed. (2d) 775; *Warren* v. *Commissioner*, 133 Fed. (2d) 312, affirming 45 B. T. A. 379.

We first dispose of the relationship of the beneficiaries to the settlor. The instant trust involves a complete family group and, therefore, the arrangement should be subjected to careful scrutiny in determining

---

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), or whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. \* \* \*

whether the income is taxable to the settlor or the beneficiaries. *Cox v. Commissioner*, 110 Fed. (2d) 934. The arrangement comes, in this respect, within the doctrine of the *Clifford* case, where the Court was considering the basic question of whether one economic unit could be multiplied into two or more by valid trust arrangements.

The second consideration is the control the grantor reserved over the trust either by the trust instrument or by control over the trustee. As was pointed out in *Suhr v. Commissioner*, 126 Fed. (2d) 283, the decision in each case must depend upon an analysis of the terms of the trust in each instance and of all the circumstances attendant upon its creation and operation. Considering the trust instrument in its entirety, we think the grantor could hardly have reserved more control over the corpus than he did. In the first place he appointed himself sole trustee and provided that he could not be removed except by his own act. He further gave himself authority to appoint his own successor and to appoint cotrustees. As trustee, he was given full authority to consent to and continue the baking business, to take part in the management, to sell or exchange any part of the business, and to take part in any merger, reorganization, extension, consolidation, or any other change in the business. He was not required to give bond. He could use his own discretion as to investing or reinvesting the trust fund. He was not liable for any depreciation in securities held, or for any losses, unless the losses occurred by reason of his own gross negligence or bad faith. He was to determine whether money or property coming to his hands was principal or income. He had authority to make advancements or to borrow money for such purposes as he deemed proper, could make notes for such purposes, and, as security therefor, could pledge or mortgage any part or all of the trust estate. He had full power and authority to pay over to his wife (the primary beneficiary) any part of the corpus in case of sickness, educational requirement, emergency, or other needs. He was also to vote all stocks and securities. He was to have the discretion to cause the stock and other securities held by him to be registered in the name of the trustee, or his nominee, or to keep them unregistered but in condition to pass by delivery. He could employ counsel and agents. He could distribute the principal of the trust fund in money or in kind, or partly in each, in his sole discretion. He was to furnish, annually, the beneficiary a detailed account of his action. The instrument is vague as to the amount that he (as trustee) was required to pay to his wife. Certain moneys coming into his hands were required to be paid to his wife, but it is apparent that petitioner, as trustee, considered this requirement very lightly. He commingled the money received from this trust with the money received from three trusts set up for the benefit of his children, and, from the evidence before us, it is apparent that he disbursed money, indiscriminately, to any of the

four, wherever he thought there was need, not considering whether the particular trust fund had sufficient cash for such a distribution. We also conclude from the evidence that the petitioner, as trustee, did not distribute all the net income of the trust to his wife, for more money came into his hands as trustee than was distributed to her. Further, though petitioner's father did not take part in the management of the bakery business, by the trust instrument petitioner was authorized to take part in its management, thereby giving him an added control over the amount of money to be turned over to himself as income to be distributed to his wife, as beneficiary. As is seen by this résumé of the powers and duties of petitioner-grantor-trustee, it is evident that he relinquished very little control over the property that he turned over to the trustee. As was said in the *Clifford* case, *supra*:

> * * * It is hard to imagine that respondent [taxpayer] felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship, respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had * * *.

This is particularly true here when we observe the trustee's operation of the trust fund's income account. We note that he had one account for the income of the wife's trust and the three children's trust. From this one account he (the trustee) directed the money to respective members of the family, apparently without regard to the amount of money that could be distributed from a particular trust, whenever the need appeared, i. e., if one of the children needed funds for his or her education, a check was drawn on the account for the amount. The overdrafts carry much more meaning to us than to petitioner's counsel, who attempts to explain the overdrafts as a mere oversight on the part of the trustee. We do not so regard them. To us it appears that petitioner set up these trusts for the maintenance of his family, i. e., to provide a separate income from which the expenses of the family would be drawn, and also to set up separate incomes to educate his children. The actual operation of the trust fund account so indicates. All the money used for the maintenance of the family came from this account and, by the same token, even though the children's trust did not have sufficient funds to provide for their education, when money was needed for this purpose it was checked out of the account.

After examining the facts before us, and the many authorities cited by both parties, which need not be discussed, we conclude that petitioner, on all of the facts, retained such control over the corpus of the trust, both by the trust instrument and by the actual operation of the trust, that the income therefrom remained, in substance, that of petitioner and he is taxable thereon.

Consideration of all the facts involved in this matter convinces us that the trusts were intended to serve and did serve to provide for the petitioner's family responsibilities, and that they should not be recognized as separate entities.

Deciding this issue as we have makes it unnecessary to consider the other grounds suggested by respondent on brief.

The next issue to be considered is whether the respondent erred in his determination that petitioner is taxable on the income of three separate trusts in the year 1943, reported as distributable to him as trustee for the benefit of his children. It is the respondent's contention that, "In transferring to himself as trustee certain shares of the preferred and common stock of the Youngsville Star Manufacturing Company, petitioner granted to himself (and exercised) such extensive powers of administrative control and authority over the income and corpus of the respective trusts as to leave him the real owner of the property purportedly held in trust, and he is, therefore, taxable on all income and gains arising therefrom * * *." We see no material difference in the phraseology of the powers and duties delegated to the trustee in the wife's trust or the three trusts for the children. In fact, both the respondent and petitioner concede this point on brief. This being true, we consider it unnecessary to examine further petitioner's argument on this point. We have held the petitioner taxable on the income of the wife's trust, and reach the same conclusion concerning the children's trusts. We see no material difference in the control reserved by the grantor in either of the trusts (i. e., the wife's trust or the children's trusts) and consider it unnecessary to repeat our reasoning here. As to the operation of the children's trusts, it appears to us that petitioner is in a less favorable position than in regard to the wife's trust. It is evident that the trusts were created for the express purpose to provide separate income, distributable to the children. This is particularly emphasized in the fact that petitioner had already spent $4,500 on Gordon's education and the trusts of the other two children were to benefit to two-thirds of this amount before Gordon's trust was to receive income, and yet even in the face of this provision Gordon and Barbara received substantial sums from their trusts before this $3,000 was distributed. In fact, they received money before the trusts had sufficient funds to pay anyone anything. We sustain the respondent on this issue.

Needless to say, the question of the $420 interest payment on the loan will also follow this same reasoning, for, in holding that petitioner retained such control over the property of the trusts as to make him taxable thereon, it would follow that a loan made to his business from the trust would be like his making himself a loan.

*Decision will be entered for the respondent.*